## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| STAR JOHNSON O/B/O J.K.J., a Minor, | ) ) ) | |
| vs. | ) ) | CASE NO. 12-CV-77-FHM |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,[1] | ) ) ) ) | |
| DEFENDANT. | ) ) | |

## OPINION AND ORDER

Plaintiff, Star Johnson o/b/o J.K.J., a minor, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[2]  In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.  The Commissioner's denial decision is AFFIRMED.

## Standard of Review

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied. *See Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v.*

---

[1]   Effective February 14, 2013, pursuant to Fed. R. Civ. P. 25(d)(1), Carolyn W. Colvin, Acting Commissioner of Social Security, is substituted as the defendant in this action.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]   Plaintiff's February 24, 2009, application for disability benefits was denied initially and on reconsideration.  A hearing before Administrative Law Judge ("ALJ") John W. Belcher was held May 27, 2010.  By decision dated July 9, 2010, the ALJ entered the findings that are the subject of this appeal.  The Appeals Council denied Plaintiff's request for review on December 22, 2011.  The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

*Chater*, 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994).  Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991).  Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands.  *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

### Sequential Evaluation for Child's Disability Benefits

The procedures for evaluating disability for children are set out at 20 C.F.R. § 416.924(a).  The first step is to determine whether the child is performing substantial gainful activity. If not, the next consideration is whether the child has a "severe" mental or physical impairment. A "severe" impairment is one that causes more than minimal functional limitations.  If a "severe" impairment is identified, the claim is reviewed to determine whether the child has an impairment that: 1) meets, medically equals, or functionally equals the listings of impairments for children;[3] and 2) meets the duration requirement.  If the child does not have impairments of a severity to meet a listing, the

---

[3]  The listings describe, for each of the major body systems, medical findings which are considered severe enough that they represent impairments which presumptively demonstrate disability.  20 C.F.R. Pt. 404, Subpt. P, App. 1.

2

severity of the limitations imposed by impairments are analyzed to determine whether they functionally equal a listing.

Six broad areas of functioning, called domains, are considered to assess what a child can and cannot do. Impairments functionally equal a listing when the impairments result in "marked" limitations in two domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a.  The six domains are: 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for yourself; and 6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).  A limitation is "marked" when it interferes seriously with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(I).  An "extreme" limitation interferes very seriously with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(I).  The definitions of "marked" and "extreme" are the same as those used for determining whether symptoms meet listing criteria.

## Background

The claim for benefits was brought on behalf of the minor child by his mother.[4] Plaintiff was 10 years old on February 24, 2009, the date the application for disability was filed and 12 years old at the time of the ALJ's denial decision.  Plaintiff claims to be disabled as a result of attention deficit hyperactivity disorder (ADHD) and behavioral problems which meet the requirements of disability under 20 C.F.R. § 416.924(a).

---

[4]  For the sake of clarity, the court will refer to the child as Plaintiff.

**The ALJ's Decision**

The ALJ applied the required sequential evaluation process for determining whether an individual under the age of 18 is disabled. 20 C.F.R. § 416.924(a).  The ALJ found that Plaintiff does not have impairments which meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App.1.  The ALJ also found that Plaintiff does not have an impairment or combination of impairments that functionally equal the listings.

In this regard, the ALJ considered Plaintiff's level of functioning in the six domains as required by 20 C.F.R. § 416.926a.  The ALJ found that Plaintiff did not have an impairment or combination of impairments that resulted in either "marked" limitations in two domains of functioning or "extreme" limitations in one domain.  [R. 49].  In particular, the ALJ found Plaintiff has:  "less than marked limitation in acquiring and using information," [R. 42-43]; "less than marked limitation in attending and completing tasks," [R. 43-44]; "marked limitation in interacting and relating with others," [R. 45-46];  "no limitation in moving about and manipulating objects," [R. 46-47]; "less than marked limitation in ability to care for himself," [R. 47-48]; and "less than marked limitation in health and physical well-being," [R. 48-49].

**Plaintiff's Allegations**

Plaintiff asserts that the ALJ erred by: 1) failing to find that he meets or equals a listed impairment; 2) failing to properly evaluate functional equivalent of meeting a listing; and 3) failing to perform a proper credibility determination.

4

**Analysis**

Analysis of Listed Impairment

In finding Plaintiff does not have an impairment or combination of impairments that

meets or medically equals one of the listed impairments, the ALJ stated:

> I have given particular consideration to The [sic] claimant's
> physical and mental impairments.  (see Section 112.00, et
> seq.,<u>Mental</u>)  Despite the claimant's impairment, the medical
> evidence does not document listing-level severity, and no
> acceptable medical source has mentioned findings equivalent
> in severity to the criteria of any listed impairment.

[R. 39].  Plaintiff argues that the ALJ ignored that he meets the requirements for listings §§

112.04 and 112.11, he asserts that the ALJ's decision is legally unsound and unsupported

by substantial evidence.  He argues that the ALJ's finding is impermissibly conclusory and

leaves the Court with nothing to review, citing *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th

Cir. 1996) (a bare conclusion that a claimant does not meet any listed impairment is

beyond meaningful judicial review).

The court finds that although the ALJ's analysis of whether Plaintiff meets a listing

could have been more extensive, it is supported by substantial evidence.  The ALJ made

an accurate summary of the evidence in connection with his discussion of whether

Plaintiff's impairments were functionally equivalent to a listing.  Within that discussion, the

ALJ noted the comments by Christopher Johnson, M.D. that he was not sure whether

Plaintiff had ADHD because he was doing well in school with the exception of one class,

that he later diagnosed Plaintiff with ADHD, started him on medication and noted that he

was doing better, was able to pay attention, and was not getting in so much trouble.

Medication was adjusted as needed and medication was added for depression.  The ALJ

noted that Dr. Johnson recorded that Plaintiff was doing well, his development was fine, and he was doing well in school  [R. 40, 41].  The ALJ cited records from Family and Children's Services regarding trouble focusing in some school classes but that physical confrontations at school have been reduced.  [R. 40].  The ALJ also noted information received from Plaintiff's assistant principal at school that Plaintiff is a playful student who gets out of control sometimes, but his academic performance is excellent.  [R. 42].

The ALJ also noted the opinions of two Disability Determination Services (DDS) experts, Hannah Swallow, Ph.D. and Ron Smallwood, Ph.D., who reviewed Plaintiff's medical records and opined that Plaintiff did not meet or medically equal the listings.  [R. 41, 261, 318].  Although the ALJ is not bound by the findings made by the DDS psychological consultants, the regulations instruct that these consultants are "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation" whose findings must be considered as opinion evidence.  20 C.F.R. § 404.1527(f)(2)(i); 20 C.F.R. § 416.927(f)(2)(i).  The opinions of these DDS experts are substantial evidence to support the ALJ's conclusion that "the medical evidence does not document listing-level severity."  [R. 39].

Plaintiff has listed pages in the record on which notations appear that Plaintiff argues demonstrate he meets listing requirements.  Although the record contains some evidence which may be contrary to the ALJ's decision, it is not for this court to reweigh the evidence.  *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).  The question before this court is whether the ALJ's decision is supported by substantial evidence.  The court finds that the ALJ's determination that Plaintiff did not meet or medically equal the listings is supported by substantial evidence.

6

In addition to considering whether the ALJ's decision is supported by substantial evidence, the court must also consider whether the correct legal standards were applied. Plaintiff argues that the ALJ's discussion of the listings was impermissibly conclusory which leaves the court nothing to review on appeal and requires the decision be reversed and the case remanded under *Clifton.*   Plaintiff also cites *Huffman v. Astrue*, 290 Fed.Appx. 87 (10th Cir 2008) (unpublished) for the proposition that the remainder of the ALJ's decision does not save the case from remand.  Plaintiff cited *Huffman* without any accompanying discussion. The Commissioner did not even mention the case.  The *Huffman* case bears some discussion.

The *Huffman* Court reversed the ALJ's decision finding that the ALJ failed to adequately explain why the claimant's impairment did not meet a listed impairment.  The Court stated that in the absence of specific weighing of the evidence, it could not assess whether relevant evidence supports the ALJ's conclusion. 290 Fed.Appx. at 89.  The Court rejected the Commissioner's argument that the lack of specific findings concerning the listings was "saved" by the ALJ's detailed discussion of the six domains used to measure functional equivalency to the listings.  The Court said that although the categories of the symptoms required for the listings were similar to the functional limitations considered in regard to the six domains for functional equivalency, they are not the same.  In support of the idea that the ALJ's analysis of functional equivalence could not supply the rationale for the decision with regard to the listings, the Court stated:

> [T]he Commissioner's rules for determining childhood disability claims explain that the six "domains are specifically designed for determining functional equivalence and are completely

7

delinked from the mental disorders and other listings."   65
Fed.Reg. 54746, 54755 (Sept. 11, 2000).

290 Fed.Appx. at 88.  According to the Court, the Commissioner's argument that the ALJ's

analysis is saved by his analysis of functional equivalence might have merit if the ALJ had

mentioned the four relevant listing categories in the context of his discussion of the six

domains used to determine functional equivalence, but concluded that since the ALJ did

not do so the ALJ's determination was "beyond meaningful judicial review," citing *Clifton*,

79 F.3d at 1009.

At first blush, the language in *Huffman* appears to be on point.  However, this court

does not read that unpublished decision as establishing a rule that the ALJ's failure to fully

discuss the listings in a child's disability case can never be overcome by a thorough

analysis of whether the child meets the functional equivalence of a listing.  Such a rule

would be contrary to the Tenth Circuit's decision in *Fischer-Ross v. Barnhart*, 431 F.3d

729, 730 (10th Cir. 2005) which rejected a construction of *Clifton* that would lead to

unwarranted remands where, although the ALJ's discussion of the listings may be lacking,

the factually substantiated findings in the remainder of the decision alleviates any concern

that a claimant might have been adjudged disabled at step three.  Further, the language

the *Huffman* Court cited from the Federal Register does not establish, or even suggest,

such a rule.

Contrary to the *Huffman* Court's statement, the language that the six domains to be

considered for determining functional equivalence to a listing are "completely delinked"

from the listings does not appear in the Commissioner's rules.  That language appears in

an explanatory section outlining changes that were enacted to 20 C.F.R. § 416.926a

(functional equivalence for children) after notice and comment.  The quoted section of the Federal Register explains that the final rules were simplified so adjudicators would no longer have to refer to any of the listings when deciding functional equivalence.  Use of the term "delinked" in the explanatory section does not purport to affect the scope or manner of judicial review.  The "delinking" spoken of appears in 20 C.F.R. § 416.926a(d), "[w]e will not compare your functioning to the requirements of any specific listing."  That language simply cannot be interpreted to alter judicial review.

The required analysis of functional equivalency for a child's case is similar to the development of a residual functional capacity and subsequent analytical steps applicable to an adult's case.  As in an adult case, it is preferable for the ALJ to render complete findings and conclusions at each step in the analytical process.  *Fischer-Ross v. Barnhart*, 431 F.3d at 730.  However, the failure of the ALJ to make complete findings at one step of the analytical process will not require reversal "when confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the [listings] determination under review." *Id*. at 734.

Having rejected the assertion that *Clifton* and *Huffman* necessarily require reversal of the instant case, the court will proceed to address the ALJ's determination that Plaintiff did not functionally equal a listing.

### Functional Equivalence of Listing

The ALJ analyzed the evidence in terms of each of the six domains of functioning: 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for yourself; and 6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1). [R. 39-49].  Based on

9

reports from school teachers and the principal and other notations in the record of good progress in school, the ALJ found that Plaintiff had less than a marked limitation in acquiring and using information.  [R. 43].  Citing reports that medication was helpful for Plaintiff's school performance and focus, and reports from a teacher and the principal that his academic performance was excellent, the ALJ found that Plaintiff has less than marked limitation in attending and completing tasks.  [R. 44-45].  Based on reports of repeated suspensions from school for fighting and discipline for disruptive conduct, the ALJ found that Plaintiff has marked limitation in interacting and relating with others. [R. 46].  The ALJ relied on treatment notes that Plaintiff is good at track and basketball and the lack of any evidence in the record of limitations in this area to support his conclusion that Plaintiff has no limitation in moving about and manipulating objects.  [R. 47].  Based on notations that Plaintiff is able to care for himself at an age-appropriate level, and the opinion of a teacher, the ALJ found that Plaintiff has less than marked limitation in the ability to care for himself.  [R. 48].  Relying on the notations of positive results from prescribed medications, the ALJ concluded that Plaintiff has less than marked limitation in health and physical well-being.  [R. 49].  Since Plaintiff did not have marked limitations in two of the domains or any extreme limitations, the ALJ found that Plaintiff did not functionally meet the listings of impairments.

Plaintiff argues that he functionally meets a listing because he has a marked impairment in two of the functional equivalency domains:  attending and completing tasks; and interacting and relating with others.  As support for this argument Plaintiff points to the DDS reviewers' finding that Plaintiff had marked limitations in the area of attending and completing tasks, [R. 263, 323], and the ALJ's finding of marked limitations in the area of

10

interacting and relating with others.  Although the DDS reviewers and the ALJ found marked limitations in only one area, those were different areas.  Plaintiff argues that the ALJ should have adopted the DDS reviewers' opinion concerning the area of attending and completing tasks which together with the ALJ's finding of a marked limitation in the area of interacting and relating with others would have resulted in a finding of disability.

The ALJ stated he disagreed with some of the DDS reviewers' specific findings in the six functional equivalency areas.  [R. 42].  The ALJ did not specify what findings he disagreed with but it is obvious that he disagreed with the DDS reviewers' conclusion that Plaintiff had less than marked degree of limitation in interacting and relating with others because the ALJ found that area to have a marked limitation.  The ALJ found that Plaintiff had a marked limitation in that area due to his fighting and disciplinary problems at school.  [R. 46, 263].  It is also obvious that the ALJ disagreed with the DDS reviewers' opinion that Plaintiff had marked limitation in attending and completing tasks.  The ALJ found that Plaintiff had less than marked limitations in this area.  [R. 44, 263].  Plaintiff argues that the ALJ engaged in picking and choosing only the evidence that supported his decision, ignoring teacher reports of Plaintiff's inability to stay on task.

The court disagrees that the ALJ engaged in impermissible picking and choosing of evidence.  The ALJ clearly acknowledged the teacher reports that Plaintiff has a very serious problem with focusing and staying on task.  [R. 45].  However, he also cited later reports which were generated after the initial DDS review[5] and which indicate Plaintiff is

---

[5] The initial DDS review is dated March 18, 2009, [R. 261-266], the subsequent review is dated June 17, 2009, [R. 318-323].  The reports cited by the ALJ are dated April 6, 2009, [R. 376], and November 20, 2009, [R. 403].

able to stay on task when assignments are given.  [R. 376, 403].  The ALJ also noted

Plaintiff's improving grades and the school's assistant principal's March 25, 2010 comment

that Plaintiff's "academic performance is excellent."  [R. 45, 421].  The information about

Plaintiff's ability to stay on task, improving grades, and excellent academic performance

was not available to the DDS reviewers and supports the ALJ's disagreement with the DDS

reviewers' conclusions.  The court finds that the ALJ's conclusion that Plaintiff has less

than marked limitations in attending and completing tasks is supported by substantial

evidence.[6]

What remains to be determined is whether the ALJ's decision that Plaintiff does not

functionally meet a listing provides a proper basis for upholding what Plaintiff argues is the

ALJ's conclusion that Plaintiff's impairments do not meet a listing.  In *Fischer-Ross*, 431

F.3d at 733 the Court stated an ALJ's findings at other steps of the process may provide

a proper basis for upholding a conclusion that a claimant's impairments do not meet or

equal a listed impairment.  This "harmless error" analysis is appropriately applied where

---

[6] Plaintiff submitted additional school records to the Appeals Council which cover the time period from March 2011 to May 2011.  [R. 11-32].  Although the additional records were not before the ALJ, the Tenth Circuit has ruled that "new evidence [submitted to the Appeals Council] becomes part of the administrative record to be considered when evaluating the Secretary's decision for substantial evidence." *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994).  Accordingly, even though the Court may not reweigh the evidence or substitute its judgment for that of the Commissioner, *O'Dell* requires the Court to review the new evidence to determine whether, even considering this new evidence, the ALJ's decision is supported by substantial evidence.

The court finds that the additional school records do not undermine the determination that the ALJ's decision is supported by substantial evidence. After testing, it was determined that Plaintiff is capable of grade work in all levels but has some problems with boundaries and peer relationships.  [R. 28].  Plaintiff scored advanced and satisfactory on the OMAAP (Oklahoma Modified Alternative Assessment Program) tests this year and it was determined that he would take the OCCT (Oklahoma Core Curriculum Test) the next year. *Id.*

In his opening brief, Plaintiff makes reference to a hospitalization at HillCrest Behavioral Health that occurred after the hearing. [Dkt. 15, p. 6].  Plaintiff makes some speculative comments that the hospitalization could have occurred because of the failure of his medications to work.  *Id.*  Since Plaintiff did not provide the medical records of that hospitalization to the Appeals Counsel there is nothing in the record for the court to review.  Accordingly, Plaintiff's comments in this regard have not been considered in evaluating this appeal.

the court can "confidently say that no reasonable administrative fact finder, following the correct analysis, could have resolved the factual matter in any other way." *Id*. at 733-34.

In addition to medical findings particular to the specific listings, the relevant listings, §§112.04 and 112.11, also require medical findings of marked impairments in two of the following four areas:     age-appropriate cognitive/communicative functioning; age appropriate social functioning; age appropriate personal functioning; and maintaining concentration, persistence, or pace.  20 C.F.R. Pt. 404 Subpt. P., App. 1, §112.02B2. These four areas are known as the "B criteria."  Although the six domains of functioning analyzed and discussed by the ALJ are not the same as the "B criteria" of the listings, they do overlap and the same information in the record is considered to make the relevant findings.  In this case the ALJ provided detailed factual findings to support his conclusions about the six domains of functional equivalence.  In light of the ALJ's supported findings that Plaintiff has a marked limitation in only the area of interacting and relating with others and no limitation or less than marked limitation in the other areas, the court is confident that a more thorough discussion of the evidence in light of the "B criteria" of the listings would not have changed the outcome of the case.[7]  That is, the court is confident that no reasonable administrative fact finder could have resolved the matter any other way.  Thus, it is appropriate to apply harmless error to the ALJ's failure to more fully discuss the listing criteria.

---

[7]  Since the "B criteria" are not met, it is not necessary to discuss the other criteria of the relevant listings as they require the existence of the "B criteria" in addition to the other medical criteria.  *All* of the specified medical criteria must be matched to meet a listing.  An impairment that manifests only some of the criteria, no matter how severely, does not qualify.  *Sullivan v. Zebley*, 493 U.S. 521, 531, 110 S.Ct. 885, 891, 107 L.Ed.2d 967 (1988).

Credibility Analysis

Plaintiff argues that the case should be reversed because the ALJ did not perform a proper credibility analysis. The court finds that the ALJ performed an adequate credibility analysis.

The ALJ accurately outlined the prominent points of Plaintiff's and his mother's testimony. The ALJ noted Plaintiff's disruptive behavior, his bouncing off the walls, not doing what he is told, getting into trouble at school, pushing people, getting into fights, four suspensions from school that year, and his suicidal ideation on two occasions. [R. 40]. The ALJ also noted Plaintiff testified that he watches his nieces and nephews, does not get along with kids at school, does not believe the medication is helpful, and is impatient and disruptive at school. [R. 40]. The ALJ pointed out that the testimony of Plaintiff and his mother was contradicted by the record which weakened their credibility:

> Both the claimant's and Ms. Johnson's allegations are contrary to the evidence in the record. At the hearing, the claimant testified that his medications do not work, and his mother testified that (sic) will not do what he is told, and has disruptive behavior in school. These assertions are contradicted by Dr. Johnson's notes at the claimant's most recent visit in March, 2010. In those notes, Dr. Johnson states that the claimant feels that his medication really helps with his concentration and focus. Dr. Johnson also notes that the claimant is happy with his medication and is doing so well that he actually made the honor roll. This contradiction weakens both the claimant's and his mothers credibility.
>
> Ms. Johnson's allegations regarding the claimant's school behavior problems are not consistent with the evidence. At the hearing, Ms. Johnson testified that the claimant is disruptive at school, will not do what he is told, gets into fights, and has been suspended 4 times this year. Conversely, the claimant's assistant principal, R.J. Alford, indicates in his March 25, 2010 letter that the claimant is a "very playful student. . . He notes that the claimant's playfulness gets out of control at times and

14

turns into an altercation, but he states that the claimant's academic performance is "excellent."

[R. 41-42].

The ALJ cited numerous grounds tied to the evidence for his credibility determination. The court is persuaded that the ALJ's credibility findings are closely linked to substantial evidence. Since the ALJ properly linked his credibility finding to the record, the court finds no reason to deviate from the general rule to accord deference to the ALJ's credibility determination. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir.1995) (credibility determinations are peculiarly the province of the finder of fact, but should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings)."

## Conclusion

The court finds that the record contains substantial evidence supporting the ALJ's denial of benefits in this case, that the ALJ applied the correct standards in evaluating the evidence, and that any error committed by the ALJ in his discussion of the listings was harmless. Therefore the Commissioner's denial of benefits is AFFIRMED.

SO ORDERED this 24th day of June, 2013.

Frank H. McCarthy

FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE